1

2

3

4

5

6                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
7                            AT SEATTLE

8  CHARLENE C. KNABE,                    )
                                         )
9                          Plaintiff,    )   Case No. C10-44 MJP BAT
                                         )
10       v.                              )   **REPORT AND**
                                         )   **RECOMMENDATION**
11  MICHAEL J. ASTRUE, Commissioner of the )
   Social Security Administration,       )
12                                       )
                          Defendant.     )
13

        Plaintiff, Charlene C. Knabe, seeks review of the denial of her second application for
14
   Supplemental Security Income (SSI) by the Commissioner of the Social Security Administration,
15
   after a hearing before an administrative law judge (ALJ).  Dkt. 15.
16
        Ms. Knabe contends that (1) the ALJ erred in his re-assessment of her residual functional
17
   capacity (RFC), when he failed to include all the nonexertional limitations established by the
18
   doctors he purported to rely upon, and (2) the ALJ's step five finding that Ms. Knabe can make
19
   an adjustment to other work is erroneous because the vocational expert (VE) testimony upon
20
   which that finding is based was premised on an incomplete hypothetical.  *Id*. at 8.  For the
21
   reasons below the Court recommends the case be **REVERSED** and **REMANDED** for further
22
   administrative proceedings
23

REPORT AND RECOMMENDATION- 1

1

## I.    FACTUAL AND PROCEDURAL HISTORY

2    Charlene Knabe is currently 55 years old, has a high school education and has past work

3 experience as a home health care attendant.  Tr. 84, 146, 532.  In March of 2001, she applied for

4 SSI, alleging disability as of September 5, 1998.  Tr. 84–90.  Her application was denied initially

5 and on reconsideration.  Tr. 24.  Ms. Knabe appealed her case to federal court, and the case was

6 remanded for further administrative proceedings on April 26, 2006.  Tr. 772–87.  After a second

7 hearing conducted on May 2, 2007, the ALJ issued a decision on November 26, 2007, finding

8 Ms. Knabe not disabled.  Tr. 749.  Her application was again denied on reconsideration on

9 November 18, 2009.  Tr. 583–85.

10

## THE ALJ'S DECISION

11    Applying the five-step sequential evaluation process for determining whether a claimant is

12 disabled,[1] the ALJ found at step one that Ms. Knabe had not engaged in substantial gainful

13 activity since her original application date of March 5, 2001.  Tr. 755.

14    At step two, the ALJ found Ms. Knabe had the following severe impairments: back

15 impairment with chronic back pain, adjustment disorder with anxiety disorder, depressed mood,

16 dependent personality features, and dyslexia/reading disorder.  Tr. 755.

17    At step three, the ALJ found Ms. Knabe's impairments did not meet or equal the

18 requirements of a listed impairment.[2]  Tr. 758.

19    The ALJ found Ms. Knabe had the residual functional capacity to perform light work as

20 follows: occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand 4 hours

21 in an 8-hour workday for 20 minutes at a time, walk 4 hours in an 8-hour workday for 20

22 minutes at a time, and sit about 6 hours in an 8-hour work day.  She must periodically alternate

23
[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1; 20 C.F.R. § 416.920.

REPORT AND RECOMMENDATION- 2

1  between sitting and standing to relieve pain or discomfort.  She is limited to occasional balancing

2  and climbing of ramps and stairs with no climbing of ladders, ropes, and scaffolding or exposure

3  to workplace hazards such as working around machinery or heights.  She is limited to simple

4  repetitive tasks.  Tr. 759–60.

5      At step four, the ALJ found Ms. Knabe could not perform her past work.  Tr. 765.

6      And at step five, the ALJ found, considering Ms. Knabe's age, education, work experience,

7  and RFC, there are jobs that exist in significant numbers in the national economy that she can

8  perform and that Ms. Knabe was thus not under disability from March 5, 2001 though the date of

9  the decision.  Tr. 765–66.  In reaching these conclusions, the ALJ found that Ms. Knabe's

10  allegations regarding her limitations were not totally credible.  Tr. 760–63.

11      The Appeals Council denied review of the ALJ's decision making it the Commissioner's

12  final decision under 42 U.S.C. § 405(g).  Tr. 583.

13                    **II.      STANDARD OF REVIEW**

14      This Court may set aside the Commissioner's denial of disability benefits when the ALJ's

15  findings are based on legal error or not supported by substantial evidence.  42 U.S.C. § 405(g);

16  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  The ALJ determines credibility

17  and resolves conflicts and ambiguities in the evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039

18  (9th Cir. 1995).  The Court may neither reweigh the evidence nor substitute its judgment for that

19  of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the

20  evidence is susceptible to more than one rational interpretation, it is the Commissioner's

21  conclusion that must be upheld.  *Id*.

22  //

23  //


REPORT AND RECOMMENDATION- 3

1              **III.     DISCUSSION**

2   **A.     RFC Determination**

3        It is uncontested that Ms. Knabe is not capable of doing her relevant past work as a home

4   care attendant for the elderly.  Dkt. 15 at 5; Dkt. 19 at 3; Tr. 765.  However, the parties disagree

5   as to whether the ALJ properly determined Ms. Knabe's RFC.  Ms. Knabe contends that the ALJ

6   erred at step four by failing to include all the nonexertional limitations assessed by the DDS

7   medical evaluators, which the ALJ found to be consistent with the objective medical evidence.

8   Dkt. 15 at 8.  Specifically, Ms. Knabe argues that the RFC determination did not account for

9   limits on pushing, pulling, reaching, lifting over ten pounds, working at a slower pace, accepting

10   instructions and responding appropriately to criticisms from supervisors, interacting with the

11   general public, or performing math.  Dkt. 15 at 8–13.  The Commissioner contends that the ALJ

12   relied upon the DDS evaluators and other doctors who determined that Ms. Knabe could do light

13   work, the RFC accounted for some of Ms. Knabe's limitations, and that to the extent limitations

14   were omitted, the error was harmless.  Dkt. 19 at 2–6.  The Court finds that the RFC is

15   incomplete and the case must be remanded for further administrative proceedings.

16        A claimant's RFC is an assessment of what the claimant can do despite her physical, mental

17   and other limitations.  *See* 20 C.F.R. § 416.945(a).  The ALJ considers a claimant's ability to

18   meet physical and mental demands, sensory requirements, and other functions.  *See* 20 C.F.R. §

19   416.945(b-d).  In assessing RFC, the ALJ must discuss the individual's ability to perform

20   sustained work in an ordinary work setting on a regular and continuing basis and describe the

21   maximum amount of each work-related activity the individual can perform based on the

22   evidence available in the case record.  SSR 96-8p.  An RFC that fails to take into account a

23   claimant's limitations is defective.  *Valentine v. Comm'r. of Soc. Sec. Admin.,* 574 F.3d 685, 690

1   (9th Cir. 2009).  The ALJ is charged with the duty to weigh all of the evidence in the record to

2   reach an RFC assessment, but is not required to discuss each piece of evidence.  *Thomas*, 278

3   F.3d at 954.

4        The ALJ determined Ms. Knabe's RFC as follows:

5        I find that the claimant has the residual functional capacity to perform light work.
         Specifically, she can occasionally lift and carry 20 pounds, frequently lift and
6        carry 10 pounds, stand 4 hours in an 8-hour workday for 20 minutes at a time,
         walk 4 hours in an 8-hour workday for 20 minutes at a time, and sit about 6 hours
7        in an 8-hour workday.  She must periodically alternate sitting and standing to
         relieve pain or discomfort.  She is limited to occasional balancing and climbing of
8        ramps and stairs with no climbing of ladders, ropes, and scaffolding or exposure
         to workplace hazards such as working around machinery or heights.  She is
9        limited to simple repetitive tasks.

10  Tr. 759–60.  The ALJ also adopted the limitations assessed by the DDS evaluators:

11       After giving careful consideration to all of the evidence, I concur with the DDS
         evaluators [Dr. Dickson and Dr. Lewis] and find that the claimant has *mild*
12       restrictions of activities of daily living, *mild to moderate* difficulties in social
         functioning, *mild* difficulties in maintaining concentration, persistence, and pace,
13       and *no* episodes of decompensation.  This assessment is consistent with the
         objective psychological evidence as a whole, including evidence submitted on
14       hearing.

15  Tr. 759 (internal citation omitted, emphasis in original).  The ALJ additionally found:

16       The DDS evaluators determined that the claimant could perform light work with
         additional nonexertional limitations and that [with] her mental health impairments
17       could understand, remember, and carry out three-step tasks in a non-public
         setting.  Pursuant to Social Security Ruling 96-6p, I will adopt the limitations
18       assessed by the DDS evaluators.  These determinations are consistent with the
         objective medical evidence as a whole, particularly the evaluations by Dr. Ungs,
19       Dr. Lind, and Dr. Fitz.

20  Tr. 764 (internal citations omitted).  The Court will now address the limitations Ms. Knabe

21  contends were erroneously omitted from the RFC.

22       **1.       Pushing, Pulling and Reaching Limitations**

23       First, in a DDS evaluation conducted on May 24, 2005, Dr. Dickson identified limitations

REPORT AND RECOMMENDATION- 5

1   in pushing and pulling with the upper extremities (Tr. 1166) and reaching in all directions

2   including overhead.  Tr. 1163.  Dr. Dickson further found that Ms. Knabe had "decreased

3   movement due to pain," "decreased ability to raise her arms above shoulder level," and "Opinion

4   is she can do light work with reaching restrictions above shoulder level."  Tr. 1172.

5           Second, Dr. Ungs identified similar limitations in his evaluation of Ms. Knabe, on May 5,

6   2005.  Dr. Ungs opined that Ms. Knabe had restrictions in "lifting, climbing, standing, carrying,

7   bending, stooping, squatting, pushing, pulling, above shoulder use, below waist use, crawling,

8   equipment operation, and tool use."  Tr. 1326.  Dr. Ungs further found Ms. Knabe "should

9   minimize below waist and above shoulder movements with less than ten pounds of force and

10  only occasionally."  Tr. 1326.  Dr. Ungs concluded Ms. Knabe could perform light work 6-8

11  hours a day with some limitations such as appropriate rest periods and pacing and that she would

12  perform best in a predictable, low-stress environment.  Tr. 1326.

13          While the ALJ stated that he adopted the limitations assessed by the DDS evaluators as

14  consistent with the objective medical evidence as a whole, the ALJ erred in omitting the pushing,

15  pulling and reaching limitations identified the doctors who physically evaluated Ms. Knabe.  The

16  ALJ provided extensive discussion in his opinion regarding the weight of the medical evidence

17  as well as reasons for finding Ms. Knabe not completely credible, but he provided no reason for

18  omitting limitations in pushing, pulling or reaching.  *See* Tr. 755–66.   The omission appears to

19  be an oversight and the RFC is thus not supported by substantial evidence.  42 U.S.C. § 405(g);

20  *Bayliss*, 427 F.3d at 1214.  Accordingly, the case should be remanded to assess Ms. Knabe's

21  RFC in light of her limitations in pushing, pulling and reaching.

22          **2.      Lifting over 10 pounds**

23          Ms. Knabe also contends the ALJ erred in the RFC determination by finding that Ms.

REPORT AND RECOMMENDATION- 6

1   Knabe could occasionally lift and carry 20 pounds.  Dkt. 15 at 11.  The Commissioner argues

2   although Dr. Ungs determined Ms. Knabe should not lift over ten pounds, Dr. Ungs also opined

3   the limitation was the result of physical deconditioning and with better conditioning she could

4   increase her force limitations from ten to twenty pounds.  Dkt. 19 at 5.  The Commissioner relies

5   upon *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001) to support the assertion that the

6   ALJ may properly rely upon Ms. Knabe's functional capacity with better conditioning.  Dkt. 19

7   at 5.

8        In *Osenbrock*, the Ninth Circuit affirmed an ALJ's rejection of a claimant's excessive

9   pain complaints in determining that the claimant could do light work.  *Osenbrock,* 240 F.3d at

10   1165.  The Ninth Circuit determined that the ALJ properly relied on a medical expert's

11   determination that the claimant's restriction of activities of daily living was a lifestyle choice that

12   resulted in physical deconditioning.  *Id.* at 1166.  The expert determined the claimant would be

13   capable of almost medium level work activity if he began reconditioning activities, and the Ninth

14   Circuit found this reliance proper.  *Id.* at 1166–67.  The Court finds *Osenbrock* to be analogous

15   to the instant case as Dr. Ungs similarly determined Ms. Knabe was capable of more activity

16   with better conditioning.  Tr. 1326.

17        The ALJ's determination is supported by substantial evidence because Dr. Dickson

18   determined Ms. Knabe could occasionally lift and carry twenty pounds (Tr. 1166) and Dr. Ungs

19   determined with normal conditioning Ms. Knabe could occasionally lift and carry twenty

20   pounds.  Tr. 1326.  Both doctors determined that Ms. Knabe was capable of doing "light work"

21   (Tr. 1172; Tr. 1326) and the lifting restrictions imposed in the RFC are consistent with the DOT

22   definition of light work.[3]  The Court must uphold the ALJ's determination when it is based on

23   _____

[3] *See* 1991 WL 688702 (Dictionary of Occupational Titles Appendix C: Components of the

REPORT AND RECOMMENDATION- 7

1    substantial evidence, so long as the determination is supported by "inferences reasonably drawn

2    from the record." *Batson v. Comm'r. of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

3    Accordingly, the Court finds the ALJ did not err in determining Ms. Knabe's lifting abilities in

4    the RFC.

5        **3.    Pacing**

6        Ms. Knabe argues the RFC is incomplete because it failed to account for her need to

7    work at a slower pace.  Dkt. 20 at 3–4.  The Commissioner argues because the ALJ was explicit

8    in the RFC that Ms. Knabe was limited to "simple repetitive tasks" the RFC adequately

9    accounted for the limitation in pacing.  Dkt. 19 at 9.  The ALJ found the RFC consistent with the

10   medical evidence including the limitations on pacing suggested by Dr. Ungs.  Tr. 764–65.  The

11   Court determines that "simple repetitive tasks" does not adequately account for limitations in

12   pacing and the RFC determination is not supported by substantial evidence.

13       "[A]n ALJ's assessment of a claimant adequately captures restrictions related to

14   concentration, persistence, or pace where the assessment is consistent with restrictions identified

15   in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)

16   (internal citations omitted).  Here, the medical evidence indicates that Ms. Knabe is limited in

17   her ability to work at a normal pace for both physical and psychological reasons.  First, Dr. Ungs

18   determined that Ms. Knabe could perform light work six to eight hours a day if "she has [the]

19   ability to rest and sit and stand as needed and *can pace herself.*"  Tr. 1326 (emphasis added).

20   Second, Dr. Lewis determined that Ms. Knabe was moderately limited in her ability to complete

21   a normal workday and workweek without interruptions from psychologically based symptoms

22   and to perform at a consistent pace without an unreasonable amount of rest periods.  Tr. 1174.

23   _____

Definition Trailer (defining light work).

REPORT AND RECOMMENDATION- 8

1   Dr. Lewis also found Ms. Knabe to be moderately limited in her ability to ability to perform

2   activities within a schedule.  Tr. 1173.  Third, Dr. Fitz also determined that Ms. Knabe had "[a]

3   relative weakness for processing speed and attention/concentration."  Tr. 868.  Dr. Fitz further

4   opined that Ms. Knabe would have difficulty on "tasks that have a time or speeded component."

5   Tr. 868.  Dr. Fitz also determined that Ms. Knabe was moderately limited in her ability to

6   respond appropriately to work pressures in a usual work setting.  Tr. 871.  The ALJ's

7   determination thus does not adequately capture Ms. Knabe's pacing restrictions because it is

8   inconsistent with the physical and psychological limitations identified in the medical testimony

9   by the DDS evaluators and other doctors the ALJ relied on.  *Stubbs-Danielson*, 539 F.3d at 1174

10   (citing *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) and *Smith v. Halter,* 307 F.3d

11   377, 379 (6th Cir. 2001)).  *Smith v. Halter* is particularly illustrative.  In that case, the Sixth

12   Circuit upheld the RFC determination related to pace because it contained *specific* limitations

13   with respect to quotas, complexity and stress that the court determined adequately accounted for

14   limitations in pacing identified by the examining doctor.  *Smith*, 307 F.3d at 379.  Here, "simple

15   repetitive tasks" does not account for the more particularized physical and mental limitations in

16   pacing identified by the examining doctors.  Accordingly, the RFC is not supported by

17   substantial evidence.

18        **4.        Working with Supervisors**

19        The ALJ adopted the limitations identified in the DDS psychological evaluation

20   performed by Dr. Lewis, which he determined was consistent with the objective medical

21   evidence as a whole, particularly the evaluations by Dr. Lind and Dr. Fitz.  Tr.764.

22        Ms. Knabe argues the RFC is deficient because it failed to account for limitations in her

23   ability to accept instructions and respond appropriately to criticisms from supervisors.  Dkt. 15 at

REPORT AND RECOMMENDATION- 9

1    11. The Commissioner argues that to the extent this determination was in error, the error became

2    harmless at step five, and Ms. Knabe failed to meet her burden with respect to proving she was

3    harmed by the ALJ's determination.  Dkt. 19 at 7, 10–11.

4         The ALJ's RFC determination must be upheld when it is based on substantial evidence.

5    *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  Substantial evidence "is such

6    relevant evidence as a reasonable person might accept as adequate to support a conclusion."

7    *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

8         Here, substantial evidence supports the ALJ's RFC determination with respect to Ms.

9    Knabe's ability to work with supervisors.  Dr. Lewis determined that Ms. Knabe was moderately

10   limited in her ability to accept instructions and respond appropriately to criticisms from

11   supervisors.  Tr. 1174.  Aside from checking the box indicating this moderate limitation, Dr.

12   Lewis did not further elaborate on Ms. Knabe's ability to work with supervisors.  Tr. 1174–75.

13   Dr. Lind did not identify limitations in Ms. Knabe's ability to work with supervisors.  Tr. 1308–

14   18.  Dr. Fitz determined that Ms. Knabe had slight limitations in her ability to interact

15   appropriately with supervisors and coworkers, but did not further elaborate.  Tr. 871.  The Court

16   notes that neither Dr. Lewis, Dr. Lind, nor Dr. Fitz determined that Ms. Knabe was unable to

17   work, therefore these doctors must have believed that Ms. Knabe was capable of some

18   interaction with supervisors as such interaction would be a part of virtually any employment

19   situation.  The RFC's exclusion of a limitation on interacting with supervisors does not appear to

20   be against the substantial evidence.

21        **5.      Working with the General Public**

22        Ms. Knabe also argues that the RFC is in error because it does not account for limitations

23   in her ability to work with the general public.  Dkt. 15 at 12.  The Commissioner again argues

REPORT AND RECOMMENDATION- 10

1   that if an error occurred in the RFC determination with respect to Ms. Knabe's limitations in

2   working with the public, the error was harmless due to the determination made at step five, and

3   that Ms. Knabe failed to demonstrate that she was harmed by the error.  Dkt. 19 at 7, 10–11.

4        Here, substantial evidence in the record indicates that a limitation in interacting with the

5   general public should have been included in Ms. Knabe's RFC.   Dr. Lewis determined that Ms.

6   Knabe was markedly limited in her ability to interact with the general public.  Tr. 1174.  Dr.

7   Lewis found that Ms. Knabe was unable to work in public due to social anxiety, but was able to

8   leave the house.  Tr. 1175.  Dr. Lewis concluded that Ms. Knabe would "function best in a non-

9   public setting."  Tr. 1175.  Dr. Fitz determined that Ms. Knabe's social interaction skills were

10  fair to good (Tr. 868), but determined that she was moderately limited in her ability to interact

11  appropriately with the general public (Tr. 871).

12       Given the ALJ adopted the findings of Dr. Lewis (Tr. 764) and found Ms. Knabe had

13  mild to moderate difficulties in social functioning (Tr. 759), the ALJ erred in failing to include

14  Ms. Knabe's limits in interacting with the public in the RFC determination.

15       **6.        Limitations Pertaining to Mathematics**

16       The ALJ determined at step two, that Ms. Knabe's dyslexia/reading disorder was a severe

17  impairment.  Tr. 755.  Ms. Knabe argues the RFC is incomplete because it does not specifically

18  provide for her limited mathematical abilities.  Dkt. 15 at 12.  Ms. Knabe contends the exclusion

19  of the limitation for mathematics is erroneous because the ALJ adopted the dyslexia/reading

20  disorder determination at step two based on the very same doctors' reports that also identified

21  her limitation in math.[4]  *Id.*  The Commissioner argues the RFC adequately accounts for Ms.

22  Knabe's difficulties with mathematics because the RFC limits Ms. Knabe to "simple repetitive

23  [4] However, Ms. Knabe does not appear to contend that her limitations in mathematics should
have been separately listed as a severe impairment at step 2.

REPORT AND RECOMMENDATION- 11

1   tasks." Dkt. 19 at 2 and 6.

2      Dr. Lewis noted that Ms. Knabe may have a mathematics disorder.  Tr. 1175.  Dr. Fitz

3   determined that that Ms. Knabe's "potential for increasing her independence and for being

4   competitively employed appears to be moderately reduced as a result of her cognitive

5   difficulties." Tr. 868.  Dr. Fitz further opined that Ms. Knabe would have difficulty performing

6   work tasks that involved reading, writing and mental math.  Tr. 868.  Dr. Lind similarly

7   determined "Based on her limited arithmetic skills, she would not be a good candidate for a job

8   that required any mathematical ability."  Tr. 1311.

9      The Commissioner cites 20 C.F.R. § 416.964(b) to support the contention that "Even

10   individuals with marginal education backgrounds are able to do simple, unskilled types of jobs."

11   Dkt. 19 at 6.  However, this regulation pertains to how education level is used as a vocational

12   factor.  Subsection (b) provides that the numerical grade level completed by a claimant in school

13   may not represent the claimant's actual educational abilities, which may be higher or lower

14   depending on other evidence in the record.  The regulation describes marginal education to mean

15   the "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled

16   types of jobs . . . . formal schooling at a 6th grade level or less is a marginal education."  20

17   C.F.R. § 416.964(b)(2).  As this regulation recognizes, claimants may have significant disparities

18   between education and ability.  *Id.*  Substantial evidence in the record indicates that Ms. Knabe

19   has marked limitations in her ability to perform math.  The Court finds that "simple repetitive

20   tasks" does not adequately account for Ms. Knabe's mathematical limitations.

21   **B.      Step Five**

22         **1.        Hypothetical to Vocational Expert**

23         Ms. Knabe next contends the ALJ erred at step five when he posed an incomplete

REPORT AND RECOMMENDATION- 12

1   hypothetical to the VE.  Ms. Knabe argues the resulting determination that she could work as an

2   office helper or laundry folder is not supported by substantial evidence because the hypothetical

3   the VE answered did not contain all of Ms. Knabe's limitations.  Dkt. 15 at 14.  With respect to

4   all but the lifting and mathematics limitations, the Commissioner essentially concedes that the

5   RFC omitted the limitations, but argues the error was harmless in light of the determinations

6   made at step five.  Dkt. 19 at 6–11.  The Commissioner thus argues that Ms. Knabe has not

7   sustained her burden to demonstrate that the error was harmful.  *Id.*

8          At step five, the burden of production shifts to the Commissioner to produce evidence

9   that other work exists in significant numbers in the national economy that a claimant could

10  perform in light of her age, education, work experience, and RFC.  20 C.F.R. § 416.920(e);

11  *Valentine,* 574 F.3d at 689–90.  If the claimant is able to do other work, the Commissioner must

12  establish that there are a significant number of jobs in the national economy that claimant can do.

13  The Commissioner may meet this burden by using the testimony of a VE.  *Tackett v. Apfel*, 180

14  F.3d 1094, 1099 (9th Cir. 1999).  The Commissioner may pose a hypothetical question to the

15  vocational expert "that reflects all the claimant's limitations."  *Roberts v. Shalala*, 66 F.3d 179,

16  184 (9th Cir. 1995).  "Hypothetical questions posed to a VE must 'set out *all* the limitations and

17  restrictions of the particular claimant.'"  *Bray v. Comm'r. of Soc. Sec. Admin.*, 554 F.3d 1219,

18  1228 (9th Cir. 2009) (citing *Russell v. Sullivan*, 930 F.2d 1443, 1445 (9th Cir. 1991)) (emphasis

19  in original).  The ALJ's depiction of the claimant's impairments must be "accurate, detailed, and

20  supported by the medical record."  *Tackett*, 180 F.3d at 1101.

21         At the hearing, the ALJ posed the following hypothetical to the VE:

22             Considering someone of the claimant's age, education and work
               experience, work with the following limitations.  Lift/carry 20/10; stand
23             and walk four out of eight; sit six out of eight; will need a sit/stand
               option meaning she could sit down or stand up in place without leaving

REPORT AND RECOMMENDATION- 13

1            the work station; occasional stairs, no ropes, ladders or scaffolds;
             occasional balance, stoop; occasional balance [sic]; no heights or
2            hazards; make it simple and repetitive.  Any jobs she could do?

3    Tr. 1467.  The VE opined that Ms. Knabe could perform the jobs of laundry folder or office

4    helper.  Tr. 1468.  However, given the numerous deficiencies the Court identified in the RFC, the

5    Court finds the hypothetical was neither accurate nor supported by the medical record.  The DDS

6    evaluators' medical views, to which the ALJ gave controlling weight (Tr. 764), suggested that

7    Ms. Knabe had limitations on pushing, pulling and reaching as well as her cognitive limitations

8    and limitations with social interaction.  The Commissioner argues any errors with respect to the

9    RFC were harmless because "mistakes that are 'nonprejudicial to the claimant or irrelevant to the

10   ALJ's ultimate disability conclusion' are harmless error." Dkt. 19 at 7 (citing *Stout v. Comm'r. of*

11   *Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)).  The Commissioner further argues Ms.

12   Knabe had the burden to show the error was harmful, and she failed to show how the additional

13   limitations would prevent her from performing the occupations identified by the vocational

14   expert.  Dkt. 19 at 7 (citing *Shinseki v. Sanders*, 129 S.Ct. 1696, 1706 (2009)).  The Court finds

15   Ms. Knabe has sustained her burden under *Shinseki*, and will address the errors below.

16          **2.      Laundry Folder**

17          The VE testified that given the hypothetical posed by the ALJ, Ms. Knabe could work as

18   a laundry folder, and the job of laundry folder existed in significant numbers in the national

19   economy.  Tr. 1468.  However, the determination that Ms. Knabe could work as a laundry folder

20   did not account for all of Ms. Knabe's limitations and restrictions, and thus may have been

21   erroneous.

22          The Dictionary of Occupational Titles (DOT) provides that the job of laundry folder

23   involves "frequent reaching."  DOT 369.687-018.  On cross examination, the VE testified that

REPORT AND RECOMMENDATION- 14

1 the laundry folder job required frequent reaching, but because a reaching limitation was not part

2 of the ALJ's hypothetical, she did not consider it in identifying the laundry folder job for Ms.

3 Knabe.  Tr. 1473.  However, as discussed above, Dr. Dickson and Dr. Ungs both determined that

4 Ms. Knabe was limited in her reaching abilities (Tr. 1163, 1172, 1326).  Dr. Ungs specified that

5 Ms. Knabe should only "occasionally" engage in below waist and above shoulder movements.

6 Tr. 1326.  If the record does not support the assumptions in the hypothetical, the VE's testimony

7 has no evidentiary value.  *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001).  Here, the VE's

8 determination that Ms. Knabe could work as a laundry folder is based on assumptions that are

9 not supported by the record because of the identified limitations in reaching.

10        **3.**      **Office Helper**

11       The VE testified Ms. Knabe could work as an office helper, a job that also exists in

12 significant numbers in the national economy.  Tr. 1468.  The DOT rates office helper as having a

13 math level of two, meaning the person performing the job should be able to add, subtract,

14 multiply and divide all units of measure, compute rate, ratio and percent, draw and interpret bar

15 graphs and conduct operations involving all American monetary units.  DOT 239.567-010.  The

16 job also involves "frequent" reaching.  *Id.*  The job may involve delivering items to other

17 businesses.  *Id.*  Because the hypothetical posed to the VE was incomplete with respect Ms.

18 Knabe's reaching limitation, mathematics limitation and limitations in interacting with the

19 public, the VE's testimony that Ms. Knabe can perform the job of office helper is not supported

20 by the record and of no evidentiary value.

21        **4.**      **Pacing Limitation**

22       Further, whether the vocations of laundry folder or office helper adequately

23 accommodate Ms. Knabe's limitation in pacing is unclear at best.  The Court is guided by the

REPORT AND RECOMMENDATION- 15

1   Ninth Circuit's holding in *Brink v. Comm'r. of Soc. Sec. Admin.*, 343 Fed.Appx. 211 (9th Cir.

2   2009), which is directly on point.  In *Brink*, the Ninth Circuit distinguished *Stubbs-Danielson*

3   and found error with a hypothetical that limited claimant to "simple repetitive tasks" because the

4   medical evidence accepted by the ALJ established the claimant had pacing limitations and

5   "simple repetitive tasks" did not fully account for such limitations.  *Id.* at 212.  Here, likewise,

6   the Court finds "simple repetitive tasks" does not account for more specific pacing limitations

7   identified in the medical evidence.

8          The Court finds as a result of an incomplete hypothetical, the VE's testimony that Ms.

9   Knabe may work as a laundry folder or office helper has no evidentiary value to support a

10   finding that she can perform these jobs.  *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir.

11   1993) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).

12          **5.        Whether the Claimant can find Work in the National Economy**

13          At step five, the ALJ must determine whether the claimant can find work in the national

14   economy.  The ALJ's determination must be supported by substantial evidence. *Tackett,* 180 F.3d

15   at 1097.  Here, the VE identified two jobs for Ms. Knabe that exist in significant numbers,

16   however because the hypothetical was incomplete, resulting in flawed testimony by the VE, the

17   ALJ's final determination Ms. Knabe can find work in the national economy may be erroneous

18   and must therefore be reassessed.

19          **6.        Remand for Further Proceedings**

20          Ms. Knabe asks the Court to vacate the Commissioner's final decision and order the

21   Commissioner to find Ms. Knabe disabled based upon substantial evidence of record.  Or,

22   alternatively, that the Court reverse and remand for further administrative proceedings.

23          Because the ALJ has committed reversible error, the Court has discretion to remand for

REPORT AND RECOMMENDATION- 16

1  further proceedings or to award benefits.  *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.

2  1990).  As the Court concludes enhancement of the record would be useful, the Court

3  recommends this case be remanded for further administrative proceedings. *See Harman v. Apfel*,

4  211 F.3d 1172, 1178 (9th Cir. 2000).

5  **IV.    CONCLUSION**

6      For the foregoing reasons, the Court recommends the Commissioner's decision be

7  **REVERSED** and the case be **REMANDED** for further administrative proceedings.

8      On remand, the ALJ should: (1) evaluate Ms. Knabe's RFC in light of the more specific

9  limitations identified DDS evaluators, Dr. Dickson and Dr. Lewis, as well as Dr. Fitz, Dr. Ungs

10  and Dr. Lind; (2) further develop the medical evidence in the record as deemed necessary; and

11  (3) reassess steps four and five of the sequential evaluation process as necessary and with the

12  assistance of a vocational expert if deemed appropriate.  A proposed order accompanies this

13  Report and Recommendation.

14      DATED this 14th day of October, 2010.

15

16

17  BRIAN A. TSUCHIDA
    United States Magistrate Judge

18

19

20

21

22

23

REPORT AND RECOMMENDATION- 17